## Johnson v. Commonwealth.

(Decided September 23, 1913).

## Appeal from Graves Circuit Court.

1. Verdict—When Will Not Be Disturbed in Criminal Case.—The verdict of a jury will not be disturbed in a criminal case, unless palpably against the evidence.

2. Larceny—Horse Stealing—Verdict.—Proof showing that the defendant was present when the horse was stolen and carried away; that he assisted in disposing of the property, and claimed a half interest in the horse, a verdict finding him guilty, will not be disturbed, his own explanation of the circumstances not being satisfactory.

3. Larceny—Horse Stealing—Carrying to Another County—Jurisdiction.—If a horse is stolen in one county and carried to another, the thief may be prosecuted in either county for larceny, as there is a new asportation in each county to which the stolen property is carried.

W. S. FOY, B. C. SEAY for appellant.

JAMES GARNETT, Attorney General; O. S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Affirming.

Chester Johnson and Ed. Johnson were indicted in the Graves Circuit Court, charged with stealing a horse, the property of R. Pate, in Graves County. The defendants demanded a separate trial. Ed. Johnson was tried and convicted; after this Chester Johnson was tried and also found guilty. Judgment having been entered upon the verdict, he appeals.

The ground chiefly relied on for reversal is that the verdict is against the evidence. The facts are these: Richard Pate, the owner of the horse, was at the house of a man named Moore, in Hickman County, and had put his horse in the stable on Sunday evening before the third Monday in November, 1911. After dark he took his horse out of the stable and hitched it at the gate while he went in the house to warm. When he came out of the house the horse was gone. Several days afterward he found his horse in the possession of a man named Hornsley, in Mayfield, Kentucky. On Monday morning Ed. Johnson was seen riding the horse toward Mayfield, and after he reached Mayfield he traded the horse to Hornsley for a roan mare, about noon. That afternoon Ches-

ter Johnson had the roan mare and traded her to another. That evening Chester Johnson, Ed. Johnson and Chester Johnson's father-in-law, went home from Mayfield in the same buggy. As Chester Johnson went into Mayfield that morning he proposed a horse swap to a man named Cash, and finally said to Cash that he was going to have a horse up in town to trade. Cash afterwards saw him in town riding the roan mare, and asked him where he got the mare. He said his cousin, Edgar Johnson, had a weak-eyed horse and traded him for the mare; that he got a half interest in the horse. After this he told Cash that he bought the horse at a sale. The Commonwealth also proved by several witnesses that Ed. Johnson and Chester Johnson who lived ten or twelve miles from Moore, were seen in that neighborhood the evening the horse was missing, driving in that direction, and that they were also seen about two o'clock in the morning coming back from there. On the other hand, Chester Johnson testified that he was at the home of his father-in-law on that night; and by his mother-in-law he proved the same fact. But his testimony as to how he got in possession of the roan mare and as to the trades he made on that Monday in Mayfield is very unsatisfactory. He testified that he bought a horse there from a liveryman who lived at Fulton, and traded this horse for the roan mare. He was unable to give the name of the man he bought the horse from, and though he had been to Fulton several times, he had never talked to the liveryman about selling the horse, and did not have him at the trial as a witness. He and Ed. Johnson were cousins and he went to Mayfield that morning in a buggy which he borrowed from his aunt, Ed. Johnson's mother. In view of the unsatisfactory evidence of the defendant as to how he came in possession of the roan mare, the weight of the evidence showing that he and Ed. Johnson were in the neighborhood of Moore's the night before, the absence of any reasonable exlanation of their conduct, and the apparent fact that he and Ed. Johnson seemed to be proceeding under a common understanding on the Monday at Mayfield when the different trades referred to were made, we cannot say the conclusion of the jury was unwarranted. We only disturb the finding of a jury in a case like this where it is palpably against the evidence.

The court instructed the jury that if they believed from the evidence beyond a reasonable doubt that the

defendant, Chester Johnson feloniously stole the horse in Hickman County and then brought it to Graves County with the felonious intent to convert it to his own use, and to deprive Pate of his property therein permanently, they should find him guilty as charged in the indictment. Appellant complains of this instruction because, as he insists, it allowed the jury to convict him in Graves County for stealing the horse in Hickman County; but the instruction does not warrant this conclusion. If a man steals a horse in one county and carries him into another, it is a fresh asportation in the second county, and he may be indicted for the larceny in either county. (Ferrill v. Commonwealth, 1 Duv., 154, Massie v. Commonwealth, 90 Ky., 485; Thomas v. Commonwealth, 12 R., 903.) This is what the court in effect told the jury. In order to convict the defendant under the instruction the jury had to believe beyond a reasonable doubt that the defendant stole the horse in Hickman County, and after so stealing it, brought it to Graves County with the felonious intention of converting it to his own use. The evidence leaves no doubt that the horse was stolen and brought to Graves County. The only material question in the case was whether the defendant was a participant in the crime, and this question was fairly and fully submitted to the jury.

Judgment affirmed.